IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JUDY A. BYRD, | ) | CV 05-6280-HU |
| | ) | |
| Plaintiff, | ) | |
| | ) | FINDING AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) | |

KATHRYN TASSINARI
DREW L. JOHNSON
1700 Valley River Drive, First Floor
Eugene Oregon 97401

    Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 SW Third Avenue, Ste 600
Portland Oregon 97204

1 - FINDINGS AND RECOMMENDATION

RICHARD M. RODRIGUEZ
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Ste 2900 M/S 901
Seattle Washington 98104

    Attorneys for Defendant

HUBEL, Magistrate Judge:

Plaintiff Judy Byrd, brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income payments (SSI) under Title XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Commissioner's final decision should be affirmed.

## BACKGROUND

Byrd was born January 15, 1955. She dropped out of school after the 10th grade. She has not worked since 1984 because she "couldn't keep a job" was "always fighting" and "can't get along with anybody but for a short time." Tr. 57.[1] She alleges she stopped working because she "always got fired." *Id.* Byrd claims disability beginning January 1, 1983, due to depression, bipolar disorder, chronic fatigue and side effects from a methadone program. Tr. 47, 57.

Byrd filed her current application constructively on January 25, 2001, and cannot receive SSI payments retroactively, even if she became disabled earlier. 20 C.F.R. §§ 416.203, 416.501. Social Security Ruling (SSR) 83-20. Byrd filed earlier applications which do not affect the present litigation.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

**DISABILITY ANALYSIS**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Byrd challenges the ALJ's findings and conclusions at the fifth and final step of the sequential process.

For the purposes of step five, the ALJ must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by her impairments. 20 C.F.R. § 416.945(a); SSR 96-8p.

If the adjudication reaches step five, the ALJ must determine whether the claimant can perform work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. § 404.1566.

If the claimant is found disabled and there is medical evidence of a substance abuse disorder, the ALJ must determine whether drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(a). A claimant is not considered disabled if drug addiction or alcoholism is a contributing factor material to the determination of disability. 42 U.S.C. § 1382(a)(3)(J); *Bustamante v. Massanari,* 262 F.3d 949, 955 (9th Cir. 2001). The claimant bears the burden of proving that drug addiction or alcoholism is not material to the disability determination. *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).

3 - FINDINGS AND RECOMMENDATION

## THE ALJ's FINDINGS

The ALJ found that Byrd's ability to work is limited by degenerative changes in the cervical and lumbar spine, status-post cervical fusion, status-post lumbar microdiscectomy and a substance abuse disorder. Tr. 17. He assessed Byrd's RFC as follows:

> The claimant retains the residual functional capacity to perform light work. She can perform occasional stooping and overhead reaching. She should not be exposed to unprotected heights or dangerous machinery. She has the ability to perform simple routine tasks, and detailed tasks occasionally. She can have brief interactions with co-workers but she should not have direct contact with the public. She can respond to changes in the workplace. She has moderate limitations at setting goals and plans. When the claimant's substance abuse is considered, she has no capacity to maintain work activity on a consistent and regular basis through a normal workday and workweek.

Tr. 27.

Based on the testimony of the vocational expert (VE), the ALJ concluded that Byrd's inability to engage in sustained, continuous work-related activities on a regular and continuing basis left her disabled.

The ALJ found that without the effects of her substance abuse, Byrd retained the capacity to maintain work activity through a normal workday and workweek. The ALJ found:

> When the [effects] of the claimant's substance [abuse] are not considered she is capable of making a vocational adjustment to other work that exists in substantial numbers, including positions such as chain stitch sewing machine operator; bench assembler; and addresser.

Tr. 27.

The ALJ concluded that Byrd was not disabled within the meaning of the Social Security Act and denied her application for SSI payments under Title XVI of the Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISCUSSION

Byrd challenges the ALJ's assessment of her RFC and the determination that substance abuse is a contributing factor material to her disability.

### I.     RFC Assessment

Byrd contends the ALJ failed to assess her RFC accurately because he improperly rejected the opinion of examining psychologist David Northway, Ph.D., and the hearing testimony of Byrd's mother, Doris Jones.

5 - FINDINGS AND RECOMMENDATION

### A.   Medical Source Statement of Dr. Northway

Dr. Northway performed a comprehensive psychological assessment on June 4, 2001. He based his evaluation on a clinical interview, mental status examination and administration of a battery of psychometric tests. He did not review Byrd's background records.

Byrd scored in the low average range of intelligence. Tests did not suggest impairment in information processing skills or deficits in attention or concentration. Two personality inventories yielded invalid profiles. Byrd's responses on the Personality Assessment Inventory (PAI) suggested that "deliberate distortion of the clinical picture is likely; the critical items as well as certain aspects of the clinical history should be reviewed to evaluate the possibility of malingering." Tr. 293. Dr. Northway had no medical records or other means of corroborating the history Byrd gave him.

Similarly, Byrd's scores on the Minnesota Multiphasic Personality Inventory (MMPI-2) suggested she was not honest in her approach to testing: "It appears likely Ms. Byrd was exaggerating her difficulties in an attempt to make herself look more psychologically disturbed than she may be." Tr. 294.

Dr. Northway found that:

> Ms. Byrd's history suggests an Axis II disorder with affective instability, difficulties in relationship, tendency to manipulate or use others for her own personal needs, and an inability to put the needs of her children before her own. A combination of Axis I and Axis II disorder would probably make functioning in a work place setting problematic. Ms Byrd would be a significant distraction to those around her.

Tr. 294.

The ALJ found Dr. Northway's assessment of Byrd's ability to function in a work place setting "not entirely persuasive" but gave his observations and the testing he administered "careful

6 - FINDINGS AND RECOMMENDATION

attention and weight." Tr. 19. The ALJ noted Dr. Northway's lack of confidence in Byrd's credibility and the absence of corroboration for the history she gave. Dr. Northway admitted that assessing Byrd's level of functioning was difficult. The ALJ also pointed out that Byrd lied to Dr. Northway about her ongoing substance abuse and later admitted that she was using heroin at the time of this evaluation. Tr. 627.

Dr. Northway performed a second comprehensive psychological assessment in July and August 2004. He did not have extensive background records, but was able to review prior psychological evaluations by Robert Kurlychek, Ph.D., in 1995, and Douglas Smyth, Ph.D., in 2002. Dr. Northway again administered a battery of psychometric tests, but noted "it is hard to know what to make of her test results." Tr. 632. Byrd demonstrated a "wide variation in test results" across Dr. Northway's evaluations and those of Drs. Kurlychek and Smyth.

One area of consistency across all four assessments was that validity measures suggested Byrd was attempting to manipulate the results. Both of Dr. Northway's administrations of the PAI yielded results indicating that deliberate distortion of the clinical picture was likely. Her MMPI-2 profile from 2001 suggested Byrd was not honest in her approach to testing. Dr. Smyth obtained a similar profile in 2002. Dr. Kurlychek noted in 1995 that Byrd had "a broad tendency to magnify the level of experienced illness." Tr. 632.

As a result, Dr. Northway was unable to give great weight to the psychological testing in forming his opinion. Accordingly, he based his opinion and diagnostic impression primarily on Byrd's presentation and the subjective histories she gave in the two interviews he conducted and in the previous evaluations by Drs. Kurlychek and Smyth. Tr. 633. Unfortunately, as the ALJ also noted, Byrd's lack of credibility made this information unreliable as well.

7 - FINDINGS AND RECOMMENDATION

Dr. Northway diagnosed polysubstance dependence reported to be in full remission, dysthymic disorder, pain disorder and personality disorder. He assigned a global assessment of functioning score (GAF) of 45. He felt Byrd's most significant problems were related to a personality disorder.

Dr. Northway completed two worksheets in support of Byrd's present SSI application. On one, he rated the severity of Byrd's impairment in the four major categories of function used to determine whether a claimant's mental impairment is equal in severity to any of the presumptively disabling conditions listed in the regulatory Listing of Impairments: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. Dr. Northway opined that Byrd had marked impairment in social functioning and mild limitations in the other categories. He indicated that he would not expect any change in these severity ratings if Byrd did not use drugs or alcohol. Tr. 621-22.

The second worksheet was a questionnaire on which Dr. Northway rated the severity of Byrd's impairment in each of 20 work-related abilities used on the Commissioner's standard mental RFC assessment form. The instructions on the form directed him to exclude any limitations that would go away if Byrd stopped using drugs or alcohol. Tr. 616.

Dr. Northway indicated that Byrd had marked limitation in the following abilities: working in coordination or proximity with others; completing a normal work schedule without interruption from psychological symptoms; interacting appropriately with supervisors; and getting along appropriately with co-workers. Tr. 616-20. In narrative comments, Dr. Northway referred to his reports and the other psychological evaluations, indicating the discrepancies noted there. Tr. 620.

The ALJ found Dr. Northway's opinion that Byrd has marked impairment "somewhat credible to the extent it incorporates the claimant's ongoing substance abuse." Tr. 22. He did not accept the findings as a reliable assessment of Byrd's ability to function in the absence of substance abuse.

Byrd contends the ALJ failed to give legally adequate reasons for rejecting Dr. Northway's opinion. An ALJ can reject an examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An uncontradicted opinion may be rejected for clear and convincing reasons. *Thomas*, 278 F.3d at 956-57.

Dr. Northway's opinion regarding the impact of substance abuse was contrary to that of Byrd's primary care physician, Gary Van Winkle, M.D. Dr. Van Winkle opined that Byrd's chief medical problem was chronic opiate addiction with recurrent relapses to abuse of alcohol and street drugs, including heroin, cocaine, methamphetamine and marijuana. Tr. 505.

The ALJ found that Byrd's embellishment and exaggeration of her symptoms left Dr. Northway's findings inconsistent and unreliable. Byrd's past claims that her substance abuse was in remission had proved false and all psychological evaluations had indicated a tendency to manipulate others for her own needs. Her scores on personality measures were consistently invalid. Dr. Northway could not know whether her substance abuse was truly in remission and he indicated that the only way to be sure would be to administer regular drug screening tests.

The ALJ concluded that Dr. Northway's findings of marked impairment were based on Byrd's unreliable subjective reporting which reflected deliberate manipulation and ongoing substance abuse. Byrd did not challenge the ALJ's adverse credibility determination and this court finds it well founded. An ALJ can properly reject a physician's disability opinion that is premised on the claimant's own subjective complaints of disabling symptoms which the ALJ has properly discounted. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

In summary, the medical reports, Byrd's invalid psychological testing, her demonstrated mendacity in describing her substance abuse and Dr. Northway's reliance on her subjective presentation provide a specific and legitimate basis for rejecting Dr. Northway's opinion.

### B.  Lay Witness Statement

Byrd's mother Doris Jones testified that Byrd is hostile and lacks the ability to get along with others, even when not using drugs. The ALJ found Ms. Jones generally credible, but did not accept her description of Byrd's limitations in social functioning as a true picture of Byrd's personality when she abstained from drugs.

Friends and family members and others in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). Such testimony cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. *Id.*

The ALJ found Ms. Jones' testimony credible to the extent it was consistent with the medical reports. The medical reports indicated that Byrd engaged in activities that were inconsistent with her asserted inability to get along with others. Dr. Van Winkle reported that Byrd "held down a job as a maid at a motel for many months during one of her remissions from drug addiction." Tr. 505. Robert Hacker, M.D., treated Byrd's back pain and reported in June 2002, that she was riding her bike 10 miles per day. Tr. 555. Byrd reported engaging in typical household activities, tending her mother's garden, fishing, going to the movies, shopping at stores, riding cross country for weeks at a time with a long haul driver and attending substance abuse treatment meetings. These activities are not equivalent to competitive work, but are inconsistent with Ms. Jones' testimony that Byrd is incapable of getting along with others. The ALJ noted that Ms. Jones did not mention Byrd's substance abuse in her description of activities. This suggests that Ms. Jones was not aware of the extent of Byrd's dependence or minimized the effects of it.

The medical reports also reveal that Byrd persistently minimizes her substance abuse. She repeatedly reported that she had recently relapsed after a long period of sobriety. In truth, she has a fairly continuous history of heroin and marijuana abuse with frequent episodes of alcohol, cocaine or methamphetamine abuse. The ALJ could reasonably conclude that Byrd minimizes her substance abuse and exaggerates her psychological difficulties in her presentation to her mother, as well.

In summary, the ALJ properly evaluated Ms. Jones' testimony in context with the record as a whole. The conclusions he reached with respect to her testimony are supported by substantial evidence and should not be disturbed.

### II. Materiality of Substance Abuse

Byrd contends that ALJ erred in finding that substance abuse is a contributing factor material to her disability. The key factor in assessing materiality is whether the Commissioner would still find the claimant disabled if she stopped using drugs and alcohol. 20 C.F.R. § 416.935(b). The claimant bears the burden of proving that drug addiction or alcoholism is not material. *Ball v. Massanari*, 254 F.3d at 821.

Byrd contends she satisfied her burden because Dr. Northway opined and Ms. Jones testified that Byrd would continue to have marked limitations getting along with others and accepting supervision even if she stopped using drugs and alcohol. This contention cannot be sustained because the ALJ properly discounted Dr. Northway's opinion and the lay witness testimony of Ms. Jones. As described previously, their opinions and observations relied on Byrd's subjective presentation. The record includes abundant evidence from which the ALJ could reasonably conclude that Byrd's subjective presentation cannot be trusted.

Accordingly, Byrd failed to prove that her addiction to heroin and abuse of marijuana, alcohol and other street drugs was not material to the ALJ's determination of disability.

### RECOMMENDATION

Based on the foregoing, the Commissioner's determination that Byrd does not suffer from a disability and is not entitled to SSI payments under Title XVI of the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision should be affirmed and the case should be dismissed.

**SCHEDULING ORDER**

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due November 1, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections by filing objections no later than November 15, 2006. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

IT IS SO ORDERED.

DATED this _17th__ day of October, 2006.

/s/ Dennis J. Hubel
_____
Dennis J. Hubel
United States Magistrate Judge